UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

In re:

LUIS BELLO,

    Debtor.
_____/

AMERICAN AERONAUTICAL
CORPORATION, INC.,

    Plaintiff,

v.

LUIS BELLO,

    Defendant.
_____/

Case No.: 23-16176-PDR

Chapter 11

Adv. Proc. No.:

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS

Plaintiff/Creditor, American Aeronautical Corporation, Inc. (the "Plaintiff" or "American"), files this complaint ("Complaint") against Luis Bello, the debtor in the above-captioned Chapter 11 case ("Debtor" or "Bello"), and sues the Debtor seeking a determination that the combined $1,618,993.25 debt and any other debt he owes to American is excepted from his discharge and is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6), and Fed. R. Bankr. P. 7001(6).

**I.  NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE**

1. American seeks a determination that the debts owed by the Debtor to American are excepted from discharge and are nondischargeable under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

2. American is an aeronautical corporation doing business in and headquartered in the state of Virginia.

3. Defendant Bello is an individual residing in Broward County, Florida, who is over the age of eighteen years, and is otherwise *sui juris*.

4. The Court has jurisdiction over the adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

6. This is a core proceeding to be heard and determined by this Court pursuant to 28 U.S.C. §157(b)(2)(I).

7. All conditions precedent to the bringing and maintenance of this action have occurred, been excused, or otherwise waived by the Debtor.

## II.    GENERAL ALLEGATIONS

8. At all times relevant, Debtor was the owner of Aero Excel Components, Inc. ("Aero"), a Florida corporation which was administratively dissolved on September 22, 2020.

9. At all times relevant, on information and belief, Aero was Defendant's alter ego, and Defendant violated its corporate form, its corporate governance documents, and Florida law by paying personal expenses with Aero's funds, among other violations.

10. American owned certain aircraft parts, which it consigned to Aero in 2008 (the "Consigned Parts").

11. Debtor entered into an oral agreement with American (the "Consignment Agreement") whereby Aero agreed to store the Consigned Parts, obtain buyers for the Consigned Parts, sell the Consigned Parts, and remit payment of the proceeds from the sale of the Consigned Parts to American.

12. Under the Consignment Agreement, Aero was required to obtain American's consent before it sold any of the Consigned Parts.

13. In November 2018, Debtor as representative of Aero, disclosed to American that he had sold many of the Consigned Parts for his own benefit (the "Parts"), converting the Parts for his own use and retaining the proceeds from the sale(s) of the Parts.

14. At the same time, Debtor also disclosed that, acting through Aero, he had been selling the Parts to various companies for several years unbeknownst to American, without American's consent, without informing American, and without remitting the proceeds to American.

15. Debtor agreed that the parts were worth $900,000.00 at a minimum.

16. Debtor agreed to provide American with an accounting of all the parts which were sold.

17. Despite several requests for an accounting of the specific stolen parts, Debtor failed to turn over any documents showing which of the Consigned Parts were sold without American's consent.

18. To date, American has been unable to fully calculate the extent of its damages from Debtor's theft because such information is uniquely within Aero and/or Debtor's knowledge and control.

19. Prior to informing American that he had sold the Parts in November of 2018, and despite having already sold some of the Parts, during the period from 2008 through and including November 2018, Debtor continued to fraudulently represent to American and its principal that he possessed the Parts and was holding them for sale.

20. Before entering into the Consignment Agreement, Debtor represented that he had previously been involved in the sale and brokering of aircraft engine parts, that he had been involved in several avionic teardowns, and that he would sell all of the Consigned Parts, including the Parts, for American's benefit and only with American's consent.

21.     Debtor made the above representations in order to induce American into entrusting him, acting through Aero, with the Consigned Parts so that he could sell them for his own benefit.

22.     Debtor continued to misrepresent that he was still holding the Parts for sale, despite having already converted same to his own use, so that he could continue selling the Parts for his own benefit.

23.     American detrimentally relied upon Debtor's misrepresentations when it ultimately entrusted the Consigned Parts to Aero and when it continued to allow Aero to hold the Consigned Parts for sale due to its belief that the Parts had yet to be sold.

24.     Debtor, acting through Aero, induced American to enter into and continue the Consignment Agreement despite never intending to sell the Consigned Parts for American's benefit.

## The Compromise Agreement

25.     In order to compensate American for Debtor's embezzlement (the "Embezzlement"), American and Bello entered into several agreements on February 25, 2019 providing for partial repayment of the damages to American from the Embezzlement, including: the Joint Compromise Agreement (the "Compromise Agreement"), the Promissory Note Agreement (the "Promissory Note"), the Share Pledge Agreements (the "Pledge Agreements"), the Security Agreement and the Continuing and Unconditional Guaranty Agreement (the "Guaranty") (collectively, the "Agreements"). True and correct copies of the Agreements are attached hereto as **Exhibit "A"**.

26.     Under the Compromise Agreement, American and Debtor agreed that the value for the Parts was, at a minimum, $900,000.00 (the "Debt"). **Exhibit "A"**, page 1.

27. Pursuant to the Compromise Agreement, Aero agreed to pay American $900,000.00, and further agreed to execute and deliver the Promissory Note, Pledge Agreements, Guaranty and Security Agreement. *See* **Exhibit "A"**, pages 5-6.

28. The Compromise Agreement provides for and defines event of default under and remedies for any material breach of the Agreements. **Exhibit "A"**, pages 14-18.

29. Among other material breaches, the Compromise Agreement provides that Aero's failure to pay any principal of the Promissory Note constitutes an event of default. **Exhibit "A"**, page 14.

30. The Compromise Agreement also provides that upon default, American is entitled to declare the debt, together with all interest, immediately due and payable without any notice of any kind and that it is further entitled to immediately bring legal action against Aero. **Exhibit "A"**, page 16.

31. The Compromise Agreement also provides that Aero will indemnify American and that Aero will be responsible for attorneys' fees in the event of, inter alia, any default. **Exhibit "A"**, 18-19.

32. Under the Promissory Note, Aero agreed to pay American a total of $900,000.00. **Exhibit "A"**, page 26.

33. The Promissory Note provides that interest shall accrue on the unpaid balance at a rate of twenty percent (20%) *per annum*. **Exhibit "A"**, page 26.

34. The Promissory Note also includes an attorneys' fee provision. **Exhibit "A"**, page 28.

35. Under the Guaranty between American and Bello, Bello irrevocably and unconditionally guaranteed Aero's performance under the Promissory Note and assumed any and

all liabilities resulting from Aero's failure to comply with its payment obligations under the Promissory Note. **Exhibit "A"**, page 65.

36. Under the Promissory Note, Aero agreed to pay American the monthly amount of $25,000.00 for six (6) consecutive months beginning on March 1, 2019. **Exhibit "A"**, page 26.

37. Thereafter, beginning September 1, 2019, Aero agreed to pay monthly payments of $15,000.00, plus accrued and unpaid interest, until March 1, 2033. **Exhibit "A"**, page 26.

38. In 2019, Aero made payments under the Promissory Note totaling $28,000.00, and thereafter defaulted on the Promissory Note on or about April 2019.

39. On August 16, 2019, American sued Debtor and Aero in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, alleging breach of fiduciary duty, unjust enrichment, civil theft, conversion, fraud, fraudulent concealment, negligent misrepresentation, and fraudulent inducement, in addition to other causes of action (the "Civil Suit").

40. The Debtor filed Chapter 11 bankruptcy on August 4, 2023.

## COUNT I—NONDISCHARGEABILITY UNDER § 523(a)(2)(A)

41. American realleges the allegations set forth in paragraphs 1 through 40 of this Complaint.

42. Bankruptcy Code § 523(a)(2)(A) provides in relevant part, that: (a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation or actual fraud other than a statement respecting the debtor's or an insider's financial condition…

43.     The Debtor solicited transfers of property from Plaintiff by misrepresenting himself as a bona fide broker for the sale of aircraft parts, and subsequently embezzling funds from the sale of the Parts for his own use and benefit.

44.     Aero was a front which conducted no actual business and was used by the Debtor to obtain property and/or money under false pretenses, false representations, and actual fraud.

45.     The Debtor never intended to repay the agreed $900,000.00 in its entirety, and signed the Agreements, directly or indirectly, under false pretenses.

46.     The Debtor intended for American to rely on the Debtor's false statements to induce American to give the Parts to the Debtor and his sham company, Aero, which the Debtor then treated as his own property and illegally retained the proceeds from the sale of same.

47.     Debtor also intended for American to rely upon the Debtor's misrepresentations in the Consignment Agreement and the Agreements to American's detriment.

48.     American justifiably relied on the Debtor's false statements relating to the nature of Aero, Debtor's capabilities, and his financial wherewithal to comply with the Consignment Agreement and the Agreements.

49.     American was damaged by the Debtor's false statements in the amount of not less than $1,618,993.25.

WHEREFORE, American respectfully requests that this Court enter a judgment in its favor against the Defendant: (a) determining that the $1,618,993.25 debt and any other debt owed to American is excepted from the Defendant's discharge and is nondischargeable, as it is a debt for money that was obtained by actual fraud or a false representation within the meaning of § 523(a)(2)(A); (b) awarding American their costs incurred in this Adversary Proceeding; and, (c) granting such further relief as this Court deems just, equitable, and proper.

## COUNT II—NONDISCHARGEABILITY UNDER § 523(a)(4)

50. American realleges the allegations set forth in paragraphs 1 through 40 of this Complaint.

51. Bankruptcy Code § 523(a)(4) provides in relevant part, that:

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny…

52. The Consignment Agreement and the Agreements purported to create trust obligations whereby American would permit Defendant to sell American's property and remit the proceeds of sale to American, when in fact all or most of the monies were misappropriated by the Defendant for his own personal benefit, directly or indirectly.

53. Based upon information and belief, Debtor and/or Aero were insolvent or in the vicinity of insolvency during all or part of the time it operated under the Agreements.

54. The Debtor owed a fiduciary duty to American.

55. The Debtor has failed to account for or produce the amount of money with which he was entrusted by American.

56. Accordingly, the Debtor breached his fiduciary duty when he embezzled funds derived from the property of American.

WHEREFORE, American respectfully requests that this Court enter a judgment in its favor against the Defendant: (a) determining that the $1,618,993.25 debt and any other debt owed to American is excepted from the Defendant's discharge and is nondischargeable, as it is a debt for money that was obtained by actual fraud or a false representation within the meaning of § 523(a)(4); (b) awarding American its costs incurred in this Adversary Proceeding; and, (c) granting such further relief as this Court deems just, equitable, and proper.

## COUNT III—NONDISCHARGEABILITY UNDER § 523(a)(6)

57. American realleges the allegations set forth in paragraphs 1 through 40 of this Complaint.

58. Bankruptcy Code § 523(a)(6) provides in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity…

59. The Debtor embezzled not less than $900,000.00 from American by illegally selling the Parts without the consent of American, and subsequently converting the profits therefrom to his own use and benefit.

60. The Debtor knew or should have known that American incurred not less than $900,000.00 of damage as a direct result of his misrepresentations and embezzlement.

61. The Debtor knew that diverting American's money to himself for his benefit would harm American.

62. Based upon information and belief, the Debtor intended to harm American and perpetrated that harm by misappropriating the property and/or funds that American transferred to him or to Aero for his own personal gain.

63. The Debtor knew he had no legitimate claim to the money he received from the sale of the Parts.

64. The Defendant retained the funds intended for American to himself without just cause, and therefore did so with malice.

65. The Defendant intentionally committed acts with intent to injure American or with knowledge that such injury was substantially certain to occur.

66. By stealing money for his own personal gain, the Defendant intended to harm American and their property or, at the least, knew with substantial certainty that his act would harm American and their property in the amount of money he stole for himself.

WHEREFORE, American respectfully requests that this Court enter a judgment in its favor against the Defendant: (a) determining that the $1,618,993.25 debt and any other debt owed to American is excepted from the Defendant's discharge and is nondischargeable, as it is a debt for money that was obtained by actual fraud or a false representation within the meaning of § 523(a)(6); (b) awarding American its costs incurred in this Adversary Proceeding; and, (c) granting such further relief as this Court deems just, equitable, and proper.

## COUNT IV - FRAUD

67. American realleges the allegations set forth in paragraphs 1 through 40 of this Complaint.

68. Debtor made misrepresentations and omissions concerning material facts regarding the Consignment Agreement to American, including failing to inform American that the Parts had been sold without American's consent and affirmatively misinforming American that the Parts remained in Aero's performance for sale after they had been sold.

69. These misrepresentations were made during the time period of 2008 to 2018, before Debtor admitted that he had sold the Parts without American's consent and misappropriated the funds from such sales for his own use.

70. The Debtor knew of, or acted with reckless disregard as to, the falsity of these representations at the time they were made.

71. The Debtor intentionally failed to disclose the material fact that he had sold the Parts without American's consent.

10

72. The Debtor intended to induce American's reliance upon these omissions and misrepresentations.

73. American did in fact rely upon these omissions and misrepresentation by among of things, continuing to send parts to Aero/Debtor to broker for sale under the Consignment Agreement and allowing Aero/Debtor to retain the Consigned Parts it already possessed, which it would not have done absent the debtor's misrepresentations and omissions.

74. Debtor accepted the Consigned Parts from American but did not ask for consent to sell the Parts when he found a buyer, did not notify American of the sale of the Parts, and misappropriated the funds received from selling the Parts.

75. American has suffered damages as a result of its reasonable reliance on Debtor's false statements.

WHEREFORE, American respectfully requests that this Court enter a judgment in its favor against the Defendant, plus interest, costs, and such further relief as this Court deems just, equitable, and proper.

## COUNT V – NEGLIGENT MISREPRESENTATION

76. American realleges the allegations set forth in paragraphs 1 through 40 of this Complaint.

77. Debtor negligently concealed, omitted and failed to disclose that the Parts had been sold without American's consent. Correspondingly, Debtor negligently represented that Aero retained possession of and was still brokering for sale of the Parts despite the fact that the Parts had already been sold.

78. Debtor knew or should have known that his representations that the Parts had not been sold was false.

79. Alternatively, Debtor represented that the Parts had not been sold without knowledge of the truth or falsity of that representation.

80. Debtor's representation that the Consigned Parts had not been sold was intended to induce American to act on that representation.

81. American acted in justifiable reliance on the misrepresentation by, inter alia, continuing to send Consigned Parts to Aero and allowing Aero to retain possession of the Consigned Parts already in Aero's possession.

82. American suffered damages as a result of Debtor's representations that Aero had not sold the Parts in the form of the, among other things, a complete loss of the Parts and the proceeds due to American from the sale of the Parts.

WHEREFORE, American respectfully requests that this Court enter a judgment in its favor against the Defendant, plus interest, costs, and such further relief as this Court deems just, equitable, and proper.

Dated: April 12, 2024.

**I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).**

DAVID A. RAY, P.A.
Counsel for Plaintiff
303 Southwest 6th Street
Fort Lauderdale, FL 33315
dray@draypa.com
Telephone: (954) 399-0105

By:    /s/ David A. Ray
　　　David A. Ray
　　　Florida Bar No.: 13871